**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

EM RABELAIS,

      Plaintiff,

      v.

BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS,

      Defendant.

No. 1:24-CV-05723

Judge Edmond E. Chang

**MEMORANDUM OPINION AND ORDER**

Em Rabelais sues her former employer, the Board of Trustees of the University of Illinois, for hostile work environment, retaliation, and gender discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Illinois Human Rights Act, 775 ILCS 5/2-101 *et seq.* R. 3, Am. Compl. ¶¶ 1, 110–92.[1] The University moves to strike several allegations in the Amended Complaint,[2] arguing that they are immaterial or were not raised in Rabelais's charge with the Equal Employment Opportunity Commission (commonly referred to as the EEOC). R. 12, Def.'s Mot. at 6–9. The University also moves to dismiss the hostile work environment

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number. This Court has federal-question jurisdiction over the Title VII claims under 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

[2]A day after bringing this suit, Rabelais filed a new complaint to add pages and exhibits that were missing in the original complaint. *See* R. 1, Compl.; R. 3, Am. Compl. The Court thus calls the operative pleading the "Amended Complaint." But because Rabelais amended immediately and the University did not respond to the original complaint, the Amended Complaint is really her first substantive complaint.

claims and state law claims for failure to adequately state a claim and failure to exhaust, respectively. *Id.* at 9–15. Because most of Rabelais's allegations are time barred, and her timely allegations do not identify conduct that rises to the level of a hostile work environment, the Court dismisses the hostile work environment claims. But the dismissal is without prejudice for now. And because the Court grants Rabelais leave to amend, the motion to dismiss the state law claims and the motion to strike are terminated as moot.

## I. Background

For the purposes of this motion, the Court accepts as true the factual allegations in Rabelais's Amended Complaint and draws all reasonable inferences in her favor. *McGowan v. Hulick*, 612 F.3d 636, 638 (7th Cir. 2010) (citing *Erickson v. Pardus*, 551 U.S. 89, 90 (2007)).

In January 2017, Rabelais began working as a tenure-track Assistant Professor of Nursing at the University of Illinois Chicago College of Nursing. Am. Compl. ¶ 25. When Rabelais first started, she requested a disability accommodation but was denied. *Id.* ¶¶ 103–06. Rabelais also requested another accommodation—use of a service dog—that was granted about a year later in January 2018. *Id.* ¶¶ 107–08. But she says her supervisor tried to block her access to her service dog. *Id.* ¶ 109.

In September 2018, Rabelais came out as transgender and nonbinary to the Interim Head of her department, Crystal Patil.[3] Am. Compl. ¶ 29. The next month,

---

[3]Rabelais has a nonbinary gender identity and femme-presenting gender expression, Am. Compl. ¶ 15, and is using "she/her" pronouns for this suit, *id.* at 1 n.1.

two coworkers blocked Rabelais from entering an all-gender bathroom at work and asked invasive questions about her bathroom use. *Id.* ¶¶ 30–33. Because Rabelais uses a cane, she feared that she would fall and injure herself. *Id.* ¶ 35. Throughout the encounter, the coworkers referred to Rabelais as "him" and "Sir" with a tone that suggested they were intentionally misgendering her. *Id.* ¶ 36. Rabelais attempted to correct them, but they responded that they "did not care" what her pronouns were. *Id.* ¶ 37. Eventually, Rabelais said, "I'm not a fucking 'Sir'" and left. *Id.* ¶ 38.

Rabelais reported the incident to the University's Nursing Diversity Officer, who said that she could do nothing. Am. Compl. ¶¶ 39, 43. Rabelais also met with department head Patil, who said that *Rabelais* had violated the University's Code of Conduct and that "it didn't matter" that the coworkers had misgendered Rabelais and made her fear for her safety. *Id.* ¶¶ 40–42. Rabelais then contacted the Office of Access and Equity. *Id.* ¶¶ 44–45. In January 2019, Amy Truelove—a Title IX coordinator for the office—contacted Rabelais, described the incident as a "disagreement," and suggested that Rabelais meet with the coworkers to "work [it] out." *Id.* ¶¶ 46–48. Rabelais pressed Truelove and other university employees to address the incident, but no action was taken. *Id.* ¶¶ 51–57(a). Both coworkers were promoted shortly thereafter. *Id.* ¶ 55.

In July 2019, Rabelais shared information about a book club series over the College of Nursing listserv. Am. Compl. ¶ 74. Another professor replied to Rabelais's email, asserting that Rabelais had violated a policy that the listserv "be used only to communicate/disseminate information about [College] business/operations and [not]

3

anything for personal use and/or not part of one's faculty role." *Id.* ¶ 75. But Rabelais says the book club—which centered on her area of scholarship and was hosted at the College of Nursing—conformed to listserv policy. *Id.* ¶¶ 74, 76. And she alleges that other professors who do not share her gender identity advertised similar events on the listserv but were not reprimanded. *Id.* ¶¶ 77–81, 83.

Around this time, Rabelais says that she continued to complain to the University about discrimination, but to no avail. For instance, she raised concerns about discrimination against students and other faculty members based on race and national origin, but was ignored. Am. Compl. ¶ 57(c). In a September 2020 meeting with Dean Terri Weaver, as well as another University employee and union representatives, Weaver responded to Rabelais's concerns by suggesting "that transwomen are prone to screaming about these types of issues." *Id.* ¶¶ 59–60, 64. At this meeting, Rabelais also recounted several instances of harassment based on her gender identity, including a time when colleagues intentionally misgendered her at an awards ceremony and another where a dean called her a transphobic slur. *Id.* ¶¶ 65–71.

Finally, Rabelais says she was treated differently in the tenure-track process based on her gender identity and in retaliation for complaining about gender discrimination. Am. Compl. ¶ 57(b). In December 2018, Rabelais requested a "hold" on her tenure clock, which would give her an extra year to produce research. *Id.* ¶¶ 57(b), 84–85. Rabelais's request was denied twice, in April and May 2019. *Id.* ¶¶ 87–89. Rabelais appealed, and her hold request was approved in December 2019. *Id.* ¶¶ 91–93. Similarly, in August 2020, Rabelais requested a "tenure rollback"—again, a

request for additional time to produce research—based on the COVID pandemic. *Id.* ¶ 94. Numerous faculty members were granted a rollback, but Rabelais's request was denied the next month. *Id.* ¶¶ 94–95. Rabelais says she was the only faculty member denied a COVID-related tenure rollback (one other faculty member's request was initially denied but later approved). *Id.* ¶ 96.

In October 2020, Rabelais attempted to apply for a fellowship role but was rejected when Patil refused to support her application. Am. Compl. ¶ 97. And in March 2021, Weaver refused to support one of Rabelais's grant applications. *Id.* ¶ 98. That same month, Patil recommended that Rabelais be removed from the tenure track and that she not be reappointed in her position. *Id.* ¶ 99. One of Patil's reasons was Rabelais's "lack of response to mentoring and advice." *Id.* ¶ 100. Rabelais contends that this is coded language for her refusal to stop complaining about gender and other forms of discrimination. *Id.* ¶ 101. Rabelais was removed from the tenure track and ultimately separated from the University in August 2022. *Id.* ¶ 57(b).

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl.*

5

*Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (cleaned up).[4] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). At the same time, *Iqbal* instructs that "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task ...." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009). The Seventh Circuit has drawn a context-dependent distinction between relatively straightforward employment discrimination claim versus more complex claims. *Swanson v. Citibank*, 614 F.3d 400, 404–05 (7th Cir. 2010).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

---

[4]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

### III. Analysis

### A. Motion to Dismiss

The Court starts with the University's motion to dismiss. The University argues that most of Rabelais's allegations underlying her hostile work environment claims are time barred, and that she fails to allege conduct that rises to the level of a hostile work environment. Def.'s Mot. at 9. The University also moves to dismiss Rabelais's state law claims because she did not plead the facts needed to show exhaustion. *Id*. at 14–15. The Court addresses each issue in turn.

### 1. Hostile Work Environment

### a. Time Bar

Under Title VII and the Illinois Human Rights Act, an employee in Illinois must file a charge of discrimination within 300 days of the alleged unlawful employment practice. *See* 42 U.S.C. § 2000e-5(e)(1); 775 ILCS 5/7A-102(A)(3), (A-1)(1). "A claim is time barred if it is not filed within these time limits." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002). When an employee's charge is based on a discrete employment action, like termination or failure to promote, the charge must be filed within 300 days of the action. *Id*. at 113–14. But hostile work environment claims are different because "[t]heir very nature involves repeated conduct." *Id*. at 115. "A hostile work environment claim is composed of a series of separate acts that collectively constitute one unlawful employment practice." *Id*. at 117 (cleaned up). So "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the

purposes of determining liability." *Id.*; *see also Sangamon Cnty. Sheriff's Dep't v. Ill. Hum. Rts. Comm'n*, 908 N.E.2d 39, 47 (Ill. 2009) (applying the same rule to hostile work environment claims under Illinois law).

Because Rabelais filed her EEOC charge on October 13, 2021, R. 3-1, Exh. A, EEOC Charge at 1, she can only bring claims based on unlawful employment practices that happened on or after December 17, 2020, Def.'s Mot. at 10; R. 21-1, Exh. A, Pl.'s Am. Resp. Br.[5] at 1. Only a few events alleged in the Amended Complaint happened after this date: Weaver's refusal to support Rabelais's grant application in March 2021, and Patil's recommendation the same month to remove Rabelais from the tenure track and not reappoint her. Am. Compl. ¶¶ 98–99.[6] But Rabelais argues that earlier employment acts can still be considered because they are part of her hostile work environment claim. Pl.'s Am. Resp. Br. at 10–11.

But the Court may consider all the acts—including those taken before December 17, 2020—only if they are so related that Rabelais "describe[s] continuous conduct rather than isolated incidents." *Milligan-Grimstad v. Stanley*, 877 F.3d 705, 713 (7th Cir. 2017); *see also Morgan*, 536 U.S. at 118. Several factors guide this relatedness inquiry. *Ford v. Marion Cnty. Sheriff's Off.*, 942 F.3d 839, 852 (7th Cir. 2019). "The

---

[5]Rabelais moved to file an amended response brief to correct formatting issues in her original response brief. R. 21, Pl.'s Mot. The Court granted the motion and then directed Rabelais to file the amended response brief on the docket. R. 22, Minute Order. Rabelais failed to do so. But because she attached the amended response brief to her motion, the Court cites that version. *See* Pl.'s Am. Resp. Br.

[6]Rabelais's non-reappointment is the basis for her retaliation and gender-identity discrimination claims, *see* Am. Compl. ¶¶ 137–51, which is why the University does not move to dismiss those counts as time barred. Def.'s Mot. at 10.

simplest factor is time: A significant gap between alleged incidents of discriminatory harassment can sever the hostile work environment claim." *Id.* Different decision-makers or managers also indicate that incidents are not related. *Id.* at 853. And "certain intervening action by the employer can interrupt a hostile work environment claim." *Id.* (cleaned up). The Court must also consider "whether the acts involve[d] the same subject matter; … the frequency with which the acts occur[ed]; and … the degree of permanence of the alleged acts of discrimination that should trigger an employee's awareness and duty to assert [her] rights." *Tinner v. United Ins. Co. of Am.*, 308 F.3d 697, 708 (7th Cir. 2002).

Applying those factors here, the University's acts are not sufficiently related to constitute a continuous hostile work environment claim. Most importantly, there are significant gaps in time between the acts. Five months passed between the last untimely act—Patil's refusal to support Rabelais's fellowship application in October 2020—and the acts of March 2021. Am. Compl. ¶¶ 97–98. And before that, over a year passed between the listserv incident in July 2019 and the events of September and October 2020. *Id.* ¶¶ 75, 95. Although "[t]here is no magic number" for the length of time needed to conclude that events are unrelated, these "significant gap[s]" strongly suggest the events were isolated. *Ford*, 942 F.3d at 852–53; *see also Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 727 (7th Cir. 2004).

Similarly, the infrequent and discrete nature of the events suggests that they were not part of an ongoing hostile work environment. As disturbing as those alleged events are, Rabelais notes only a couple of incidents each year. *See generally* Am.

9

Compl. And most of the acts were discrete: some were one-off interactions with other University employees, such as the bathroom and listserv incidents, and others were one-off policy decisions, such as the denial of Rabelais's tenure hold and rollback requests. *See generally id.* The infrequent and discrete nature of the acts means that they "cannot be said to form a single chain" of events that support Rabelais's hostile work environment claim. *See Tinner*, 308 F.3d at 709.

The allegedly hostile acts also involve different subject matters and decision-makers. The acts ranged from verbal attacks to disagreements about the application of the University's tenure policies. *See generally* Am. Compl. And they involved different decision-makers and actors: in some instances, supervisors in the nursing department, and in others, diversity officers and employees in other departments. *See generally id.* These factors also weigh significantly against relatedness. *See Hambrick v. Kijakazi*, 79 F.4th 835, 842 (7th Cir. 2023).

The last factor—intervening action by the employer—weighs slightly in Rabelais's favor. The Amended Complaint states that the University took no intervening to interrupt the hostile work environment; for instance, the University did not discipline or remove the coworkers who harassed Rabelais outside the bathroom. Am. Compl. ¶ 53; *see, e.g., Ford*, 942 F.3d at 853–54. But because the rest of the factors weigh strongly against relatedness, this factor alone does not establish that Rabelais's allegations are sufficiently related. Even viewing the Amended Complaint in Rabelais's favor, the Court concludes that the University's alleged acts do not constitute one continuous, ongoing hostile work environment claim. Accordingly, the Court

10

cannot consider any acts before December 17, 2020, as part of Rabelais's claim because they are time barred. *See Tinner*, 308 F.3d at 709.

### b. Severe or Pervasive

The Court must still determine whether Rabelais's timely allegations plausibly suggest a hostile work environment. *See Milligan-Grimstad*, 877 F.3d at 713. Given the time bar, the only qualifying allegations are Weaver's refusal to support Rabelais's application for a fellowship and Patil's recommendation not to reappoint Rabelais. Am. Compl. ¶¶ 98–99. The Court agrees with the University that this conduct does not rise to the level of an actionable hostile work environment. *See* Def.'s Mot. at 11–14.

"To state a Title VII hostile work environment claim, a plaintiff must allege (1) she was subject to unwelcome harassment; (2) the harassment was based on her [protected status]; (3) the harassment was severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is a basis for employer liability." *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 833–34 (7th Cir. 2015). "To rise to the level of a hostile work environment, conduct must be sufficiently severe or [pervasive] to alter the conditions of employment such that it creates an *abusive* relationship." *Id.* at 834 (emphasis in original). "Whether the harassment rises to this level turns on a constellation of factors that include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."

11

*Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 806–07 (7th Cir. 2000) (cleaned up). A work environment is hostile only if "a reasonable person would find it offensive and the plaintiff actually perceived it as such." *Id.* at 807.

Here, even applying the permissive standard that applies at the pleading stage, Rabelais does not allege conduct that rises to the level of severity or pervasiveness required to adequately state a hostile work environment claim. Rabelais identifies only two acts. Am. Compl. ¶¶ 98–99; *see Lucero v. Nettle Creek Sch. Corp.*, 566 F.3d 720, 732 (7th Cir. 2009) (holding that inappropriate yet "isolated incidents" were not "sufficiently severe or pervasive to rise to the level of actionable harassing conduct"). And her allegations do not suggest that Weaver and Patil acted in an abusive or harassing manner. They merely made decisions about Rabelais's funding application and position, Am. Compl. ¶¶ 98–99, which is a far cry from physically threatening or humiliating behavior, *see Baraona v. Village of Niles*, 720 F. Supp. 3d 601, 622 (N.D. Ill. 2024) (granting summary judgment to defendant where plaintiff failed to allege any physically threatening or humiliating conduct). Courts have rejected hostile work environment claims where plaintiffs alleged significantly worse behavior. *See, e.g.*, *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 881–83 (7th Cir. 2018) (holding that vulgar nicknames, discussions of romantic relationships, and inappropriate advance from a coworker did not rise to the level of severity or pervasiveness required for a hostile work environment claim).

The Court thus dismisses Rabelais's hostile work environment claims for failure to state a claim. But because the Amended Complaint was Rabelais's first

substantive pleading, the Court grants Rabelais leave to file an amended complaint. *See Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004) (describing how leave to amend should be freely granted, "especially … when such permission is sought after the dismissal of the first complaint"). For now, the dismissal is without prejudice.

### 2. Exhaustion of State Law Claims

Under the Illinois Human Rights Act, a charge filed with the EEOC is also deemed filed with the Illinois Department of Human Rights. 775 ILCS 5/7A-102(A-1)(1). After the employee receives a determination from the EEOC, they must submit a copy to the state Department within 30 days. *Id.* If the EEOC issued the employee a Right to Sue letter, and the employee timely notified the Department, then the Department will notify the parties within 10 days that it has adopted the EEOC's determination (unless the employee requests that the Department review the EEOC's determination). *Id.* 5/7A-102(A-1)(3). Once the Department adopts the EEOC's determination, the employee can bring suit. *Id.* 5/7A-102(A-1)(3)(a).

The Amended Complaint does not say whether Rabelais followed this procedure. *See generally* Am. Compl. The University thus argues that Rabelais's state law claims must be dismissed for failure to allege that she exhausted her administrative remedies. Def.'s Mot. at 14–15. For her part, Rabelais requests permission to amend her complaint to provide additional allegations and exhibits to prove exhaustion. Pl.'s Am. Resp. Br. at 17.

13

It is not clear that Rabelais is required to plead exhaustion of the state law claims in her complaint. The University cites several cases in which courts dismissed state law claims for failure to plead exhaustion of state administrative remedies. Def.'s Mot. at 15 (first citing *Renfro v. Rotary Int'l*, 2023 WL 5487061, at \*4–5 (N.D. Ill. Aug. 24, 2023) (dismissing complaint without prejudice because plaintiff did not allege that they received a final decision from the Department); and then citing *Principe v. Village of Melrose Park*, 2020 WL 4815908, at \*4 (N.D. Ill. Aug. 18, 2020) (same)). But other courts have denied motions to dismiss because the failure to exhaust administrative remedies is typically an affirmative defense and need not be pleaded. *See, e.g.*, *Vance v. Amazon.com Servs., LLC*, 2024 WL 3823176, at \*2 (N.D. Ill. Aug. 14, 2024). This is certainly the established rule for federal Title VII claims. *See Stuart v. Loc. 727, Int'l Bhd. of Teamsters*, 771 F.3d 1014, 1018 (7th Cir. 2014). But it is not clear if the same rule applies to exhaustion of *state* law claims under the Illinois Human Rights Act. Indeed, a split on this question has emerged amongst courts in this District. *Gawlik v. Chi. Transit Auth.*, 2024 WL 4132741, at \*4 (N.D. Ill. Sept. 10, 2024) (collecting cases).

But the Court need not decide this issue right now because Rabelais is being given a chance to replead and file a second amended complaint. Even if Rabelais chooses not to replead the hostile work environment claim, she may replead and add allegations on the exhaustion of the state law claims, including adding exhibits (as Rabelais has asked to do, *see* Pl.'s Am. Resp. Br. at 17). If the University remains

14

unconvinced on exhaustion, then it can move again[7] (or seek leave to file an early summary judgment motion instead of a dismissal motion, *see Rabé v. United Air Lines, Inc.*, 971 F. Supp. 2d 807, 818–20 (N.D. Ill. 2013) (addressing at summary judgment failure to exhaust), which might avoid the intra-district pleading-stage split). Plus, even if the Court had decided to dismiss on exhaustion grounds at the pleading stage, then no doubt Rabelais would have been given permission to replead anyway (remember that the operative pleading was "amended" just to add missing pages and exhibits, *see supra* at 1 n.2). So the motion to dismiss the state law claims is terminated as moot.

### B. Motion to Strike

The University also moves to strike certain allegations in the Amended Complaint because (1) they are immaterial and prejudicial; or (2) they were not included in Rabelais's EEOC charge. Def.'s Mot. at 6–9. Because the Court has already determined that it will dismiss the Amended Complaint with leave to amend, the motion to strike is also denied as moot. But it is worth briefly addressing the parties' arguments to provide guidance as Rabelais prepares an amended pleading and the University considers how to respond.

---

[7]At the most, the University should instead move for judgment on the pleadings under Civil Rule 12(c), not move to dismiss under Rule 12(b)(6). *See Mosely v. Bd. of Educ. of City of Chi.*, 434 F.3d 527, 533 (7th Cir. 2006) (noting that the proper vehicle for failure to exhaust if the pleading contains all the necessary facts is Rule 12(c)).

### 1. Immaterial and Prejudicial Allegations

Under Civil Rule 12(f), the Court "may strike from a pleading … any redundant, immaterial, impertinent, or scandalous material." The defendant must show "that the allegations being challenged are so unrelated to plaintiff's claim as to be void of merit and unworthy of any consideration and that the allegations are unduly prejudicial." *Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc.*, 11 F. Supp. 2d 1006, 1009 (N.D. Ill. 1998) (cleaned up). "Prejudice results where the challenged allegation has the effect of confusing the issues or is so lengthy and complex that it places an undue burden on the responding party." *Id.* at 1009–10.

The University argues that Rabelais's allegations of disability discrimination and race and national origin discrimination should be struck because they are immaterial to the gender-identity discrimination claims. Def.'s Mot. at 6–7; *see* Am. Compl. ¶¶ 103–09 (disability discrimination); Am. Compl. ¶¶ 7, 13, 57(c) (race and national origin discrimination). Rabelais responds that these allegations are relevant because the University's acts, although facially neutral, were taken because of her gender identity. Pl.'s Am. Resp. Br. at 6–8.

As a general matter, Rabelais is right. In the right circumstances, facially neutral acts can support a discrimination claim. *See Cole v. Bd. of Trs. of N. Ill. Univ.*, 838 F.3d 888, 896 (7th Cir. 2016) (explaining that "forms of harassment that might seem neutral in terms of … sex or other protected status … can contribute to a hostile work environment claim if other evidence supports a reasonable inference tying the harassment to the plaintiff's protected status"). But in this case, the Amended

16

Complaint pleads facts that suggest that Rabelais's allegations are unrelated to her gender-identity claims. For instance, her allegations about disability discrimination date back to January 2017 and 2018, Am. Compl. ¶¶ 103–09, even before she came out as transgender at the University in September 2018, *id.* ¶ 29. It is thus implausible that those acts were motivated by Rabelais's gender identity, at least as currently pleaded.

On Rabelais's allegations about race and national origin discrimination, she admits that those complaints were not about herself because "she is white and did not suffer discrimination because of her race." Pl.'s Am. Resp. Br. at 2; *see Yuknis v. First Student, Inc.*, 481 F.3d 552, 554 (7th Cir. 2007) ("The fact that one's coworkers do or say things that offend one, however deeply, does not amount to harassment if one is not within the target area of the offending conduct …."). The allegations might still support Rabelais's claims if the University responded differently to Rabelais because of her gender identity. But the Amended Complaint alleges that other faculty members—who are presumably not in Rabelais's protected class—also complained about race and national origin discrimination and that they too were ignored. Am. Compl. ¶ 73. Thus, there is no basis to infer that the University acted differently because of Rabelais's gender identity.[8]

---

[8]Rabelais also argues that these allegations are relevant because hostile work environment claims may be based on multiple identity characteristics. Pl.'s Am. Resp. Br. at 1–2 (citing *Brown v. Ferrara Candy Co.*, 2023 WL 6519973, at *4 (N.D. Ill. Oct. 5, 2023)). But Rabelais's claims are based *only* on her gender identity, not on her race, national origin, or disability. *See generally* Am. Compl.

17

Still, the Court need not definitively decide whether these allegations are immaterial given the anticipated second amended complaint. It is possible that, if Rabelais files an amended pleading, she could assert additional allegations that raise a plausible inference that these acts were related to her gender identity. If the University disagrees, then it may renew this argument, and the Court will evaluate it again at that stage.

The Court adds that motions to strike under Rule 12(f) "are disfavored and will usually be denied." *Hoffman-Dombrowski*, 11 F. Supp. 2d at 1009. A few immaterial allegations are unlikely to confuse the issues or render a complaint "so lengthy and complex" that it places an "undue burden" on the University. *See id.* at 1009–10. So the University should consider whether it is worth advancing a motion to strike. And if the University's primary goal is to avoid unnecessary discovery on these allegations, *see* Def.'s Mot. at 7, then the University may raise that concern during discovery. In any event, the issue might not come up again if Rabelais omits these allegations in her amended pleading.

### 2. Allegations Missing from EEOC Charge

Finally, the University moves to strike various allegations in the Amended Complaint that did not appear in Rabelais's EEOC charge. Def.'s Mot. at 7–9. "Generally a plaintiff may not bring claims under Title VII that were not originally brought among the charges made to the EEOC." *Harper v. Godfrey Co.*, 45 F.3d 143, 147–48 (7th Cir. 1995). "This rule serves two purposes: affording an opportunity for the EEOC to settle the dispute between the employee and employer and putting the

18

employer on notice of the charges against it." *Id.* at 148. But an employee may bring "a discrimination claim in a federal district court complaint that was not brought in the charges filed with the EEOC" if "(1) the claim is like or reasonably related to the EEOC charges, and (2) the claim in the complaint reasonably could develop from the EEOC investigation into the original charges." *Id.* Under the first element, "claims are not alike or reasonably related unless there is a factual relationship between them. This means that the EEOC charge and the complaint must, at minimum, describe the same conduct and implicate the same individuals." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994) (cleaned up). The second element of the test "requires speculation as to what the EEOC might or might not discover in the course of an investigation." *Id.* at 500.

The University moves to strike the following allegations because they were not included in Rabelais's EEOC charge: that Rabelais's supervisor prevented her from accessing her service dog, Am. Compl. ¶¶ 107–09; that the University ignored Rabelais's complaints about race and national origin discrimination, *id.* ¶¶ 7, 13, 57(c); and that University employees misgendered Rabelais or called her slurs at an awards ceremony and in other contexts, *id.* ¶¶ 67–71. Def.'s Mot. at 7–9. The Court agrees in part and disagrees in part.

In the EEOC charge, Rabelais mentions opposing race discrimination. *See* EEOC Charge at 3 (describing "requests from management that [Rabelais] censor [her] opposition to racism"). The EEOC charge and the Amended Complaint thus describe the same conduct—opposing racism—and the same individuals—higher-up

19

employees at the University—in broad strokes. Those allegations are thus reasonably related to the EEOC charges. *See Malcorvian v. County of Cook*, 2024 WL 1530473, at \*2 (N.D. Ill. Apr. 9, 2024). And because the EEOC charge is quite broad on this issue, the specific allegations in the Amended Complaint could reasonably arise during the EEOC investigation. *See Babrocky v. Jewel Food Co.*, 773 F.2d 857, 864 (7th Cir. 1985) (noting that EEOC charges should be construed liberally in this context). So Rabelais is not barred from making allegations about opposing race and national origin discrimination based on the scope of the EEOC charge.

But the other allegations—about Rabelais's service dog and instances of misgendering and slurs—are not reasonably related to any claims in the EEOC charge. The charge does not describe this conduct (it mentions the bathroom incident, but that is a discrete event separate from Rabelais's other allegations of misgendering). *See generally* EEOC Charge. And it does not mention the individuals involved (neither Rabelais's supervisor, who blocked access to her service dog, nor Dean Eileen Collins, who allegedly misgendered Rabelais and called her slurs). *See generally id.*; *see also* Am. Compl. ¶¶ 67–71, 107–09. Because these allegations are not reasonably related to those in Rabelais's EEOC charge, she likely cannot bring them in this case. *See Harper*, 45 F.3d at 148; *Cheek*, 31 F.3d at 502–03. That said, the Court terminates the motion to strike because of the anticipated repleading.

## IV. Conclusion

The University's motion to dismiss the hostile work environment claims, R. 12, is granted, but without prejudice to repleading. The motion to dismiss the state law

claims and the motion to strike are denied as moot, but may be renewed if Rabelais files a second amended complaint and the University believes its arguments still apply. If Rabelais wishes to file the second amended complaint, then she must do so by April 10, 2026. In the meantime, it is time to get discovery going on the claims that were not targeted by the motions. The parties shall confer and propose a discovery plan by April 1, 2026.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 26, 2026